# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 23-121V
### Filed: December 7, 2023
### Reissued for Public Availability: January 2, 2024

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| DEBRA SIMMONS, | TO BE PUBLISHED |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Debra Simmons,* Eugene, OR, *pro se*
*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION DISMISSING PETITION[1]

On January 27, 2023, Debra Simmons ("Petitioner" or "Ms. Simmons") filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that she developed Guillain-Barré syndrome ("GBS"), as a result of the influenza ("flu") vaccination she received on November 12, 2019. ECF No. 1 ("Pet.") at 1. For the reasons discussed in this decision, I find that the petition must be dismissed because it was filed more than 36 months after

---

[1] Pursuant to Vaccine Rule 18(b), this decision was initially filed on December 7, 2023, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this decision is reissued in its original form for posting on the Court's website.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioner's first symptom of GBS began, and Petitioner has not justified the tolling of the statute of limitations.

## I.  Procedural History

On January 27, 2023, Petitioner filed a *pro se* petition for compensation. Pet. I held an initial status conference with the parties on February 7, 2023, where I informed Ms. Simmons that her petition appears to have been filed out of time. ECF No. 11 at 1. I told Petitioner that I would "give her the opportunity to file additional evidence either (1) establishing a different timeline for her injury or (2) demonstrating why the doctrine of equitable tolling should apply in her case." *Id.* I gave Petitioner 30 days to file all documentation relevant to the statute of limitations issue. *Id.* at 2.

On March 6, 2023, Petitioner filed her affidavit ("Pet. Aff.") and three medical record exhibits ("Ex. 1," "Ex. 2," and "Ex. 3"). ECF No. 12. Each exhibit contains excerpts from medical records with some pages clearly missing. On March 28, 2023, I gave Respondent 60 days to file a memorandum stating his position on the statute of limitation issue. ECF No. 13.

On May 30, 2023, Respondent filed a memorandum arguing that Petitioner's claim is barred by the statute of limitations and moving to dismiss the petition on that basis. ECF No. 14 ("Resp. Memo."). On June 1, 2023, I gave Petitioner 60 days to file a response to the memorandum. ECF No. 15. Petitioner contacted my law clerk via email on June 14, 2023, with questions about her case. On June 23, 2023, I held another status conference with the parties at which Petitioner stated that, due to her condition, she had difficulty typing and that she would prefer to speak her response to the memorandum at a later status conference. ECF No. 17. I agreed to hold another status conference at which Petitioner would have the opportunity to speak her response to the motion to dismiss. *Id.*

On July 24, 2023, I held a recorded status conference where Petitioner delivered a spoken response to Respondent's memorandum. Petitioner spoke for approximately 45 minutes and argued that the petition should not be dismissed because she has met the requirements for the application of equitable tolling. ECF No. 18.

On September 18, 2023, Petitioner contacted chambers via telephone requesting the opportunity to file additional material in response to the motion to dismiss. I granted her request and gave her 30 days to do so. ECF No. 19. Petitioner contacted chambers via telephone on October 25, 2023, requesting additional time to file her response due to technical difficulties. I granted her request. ECF No. 21. On October 30, 2023, Petitioner filed her materials, a 50-page document containing 44 pages of additional argument, contending that her claim should not be dismissed. ECF No. 22 ("Pet'r's Response").

This matter is now ripe for a determination as to whether Petitioner's claim is time barred.

## II. Summary of Medical Records and Other Fact Evidence

I have provided a brief medical summary concerning the details relevant to the statute of limitations issue in this case. Petitioner filed three PDF documents with excerpts from her medical records. Exs. 1-3.

### A. Medical Records

Prior to the allegedly causal flu vaccination, Petitioner's medical history is remarkable for back and hip pain necessitating physical therapy ("PT"), frozen left shoulder, and neck pain. Ex. 1 at 2. Petitioner also had a history of anxiety and depression that were "[n]ot well controlled" with escitalopram and Xanax. Ex. 2 at 1, 3.

Petitioner received the allegedly causal flu vaccination on November 12, 2019, at the age of 65. Ex. 2 at 1, 4. On November 22, 2019, Petitioner saw Sylvia Emory, MD, complaining of "bilateral leg pain that feels like a nerve pain that starts in her bilateral feet and radiate[s] into the upper legs." *Id.* at 5. Petitioner reported that she had had these symptoms off and on for roughly a year, but that they had been "very persistent" for the past month. *Id.* Dr. Emory ordered blood work. *Id.*

On December 12, 2019, Petitioner saw Dr. Emory for a follow-up. Ex. 2 at 7. Petitioner stated that she experienced weakness and "a lot of pain" and that she had fallen four times over the past month. *Id.* Petitioner also complained of numbness and tingling in both hands and feet. *Id.* Petitioner was hospitalized from December 13 to December 20, 2019, for "painful primary sensory neuropathy." Ex. 2 at 10. Her discharge paperwork notes that "GBS remains high on the differential." *Id.*

On January 3, 2020, Petitioner saw Dr. Emory for a follow-up after her hospitalization. Ex. 2 at 12. Dr. Emory noted that Petitioner underwent "extensive evaluation and workup including neurology consultation" while hospitalized and that Petitioner "was suspected to have a sensory variant of [GBS] with increased protein in [cerebrospinal fluid]. She was treated initially with IVIG and had autonomic variability consistent with peripheral neuropathic disease." *Id.* at 13.

On August 11, 2020, Petitioner underwent PT via video conference at which Petitioner reported continuing overall improvements in sensation, endurance, activity tolerance, and balance and that she was able to perform light tasks around her house. Ex. 3 at 4.

On January 6, 2023, Petitioner underwent PT as part of her recovery from GBS and to address a right shoulder injury resulting from a fall "during her [GBS] decline." Ex. 1 at 10. The record of this appointment includes the comment that Petitioner exhibited "antalgic gait[3] secondary to recovery from [GBS]." *Id.* at 11.

---

[3] Antalgic gait is "a limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase." DORLAND'S MEDICAL DICTIONARY ONLINE, https://www.dorlandsonline.com /dorland/definition?id=77912 (last visited Dec. 5, 2023) ("DORLAND'S").

## B. Petitioner's Affidavit

In her affidavit, Petitioner avers that prior to her flu vaccination on November 12, 2019, she was healthy and lived an active lifestyle. Pet. Aff. at 2. She states that she reported to her primary care physician ("PCP") on November 22, 2019, with serious pain and paresthesias[4] in both arms and legs. *Id.* Petitioner states that she was hospitalized for GBS from December 13 through December 20 of that year, and that she was transferred to acute inpatient rehabilitation from December 20 through December 26, 2019. *Id.*

Petitioner avers that prior to vaccination, she was fully independent in daily life except for particularly strenuous activities. Pet. Aff. at 2. She states that she now requires assistance in caring for herself and that she has problems with mobility and balance. *Id.* She suffers from fatigue and sleeps up to 14 hours per night. *Id.* She is unable to care for her three-year-old grandchild or her dog. *Id.* She describes her recovery as "excruciatingly slow." *Id.*

Petitioner states that her medical history also includes osteoarthritis in her right knee, a protruding L2-L3 disc, degenerative disc disease, chronic fatigue syndrome, anxiety, depression, and irritable bowel syndrome. Pet. Aff. at 3.

Petitioner avers that she found out about the Vaccine Program "completely by happenstance" on December 16, 2022, and she acknowledges that she filed her petition after the 36-month statute of limitations had expired. Pet Aff. at 3.

## III. Parties' Arguments

## A. Petitioner's Affidavit

In her affidavit, Petitioner acknowledged that she filed her petition after the expiration of the 36-month statute of limitations but argued that her petition should not be dismissed. Pet Aff. at 3. She articulated three bases for this position. First, Petitioner contended that her petition should not be dismissed because of "symptom aggravation." *Id.* She argued that her medical issues, including knee osteoarthritis, lower back problems, gait disturbance, fibromyalgia, chronic fatigue syndrome, anxiety, depression, chronic diarrhea, and irritable bowel syndrome have worsened since the allegedly causal flu vaccination. *Id.* at 3-5. Petitioner also stated that she has sustained an injury to her right shoulder and a fracture to her left foot as a result of GBS sequelae. *Id.* at 5. Petitioner argued that "[i]f symptom aggravation and/or sequelae qualify as a basis for extending or tolling, then I am certain that adequate information exists here to extend my [statute of limitations] far beyond its original date." *Id.*

Second, Petitioner maintained that her petition should not be dismissed because the doctrine of equitable tolling should apply. Pet. Aff. at 6. She argued that several factors "impacted [her] ability to participate in the [Vaccine Program] in a timely manner," namely:

---

[4] Paresethesia is "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." DORLAND'S, https://www.dorlandsonline.com/dorland/definition?id= 37052 (last visited Aug. 23, 2023).

| November 22 – December 12, 2019 | "symptomatic and undiagnosed at home; severe pain and paresthesias, deteriorating neurological and functional status" |
|---|---|
| December 13 – 20, 2019 | "acute hospitalization, continued severely symptomatic; treated with IVIG x 5 days, with good effect" |
| December 20 – 26, 2019 | "acute inpatient rehabilitation, 6 hrs./day rehab (PT and OT); pain, exhaustion, frightened, confused and stunned by GBS diagnosis and dependency" |
| December 26, 2019 | "discharged home, feeling that 'my whole world has been turned upside down, both physically and psychologically'" |
| December 26, 2019 – January 6, 2020 | "holiday season, please. Trying to rest and relax with my family." |
| January 6, 2020 –"???" | • "certainly beyond the end of January 2020 – barely able to manage my light self-cares, I was unable to handle my other affairs/roles/responsibilities, function in the outside world, or even really assist my husband in assuming his new tasks at home."<br>• "not formally or legally 'incompetent,' mentally incapacitated, or 'disoriented,' but…"<br>• "stunned, confused, frightened, 'brain fog,' 'discombobulated,' increased pain meds, profound fatigue and many hours of sleep"<br>• "largely dependent" |

Pet. Aff. at 6.

Third, Petitioner stated that she was unaware of the existence of the Vaccine Program until December 16, 2022. Pet. Aff. at 6. She stated that she did not immediately file her petition because she believed that the deadline had already passed. *Id.* Petitioner emphasized that none of her medical providers indicated that her condition might be related to the flu vaccine or that the Vaccine Program existed. *Id.* at 7.

Fourth, Petitioner argued that her attempts to find legal representation were unsuccessful and that this prevented her from filing her petition. Pet. Aff. at 7. She stated that she contacted two attorneys within days of learning about the Vaccine Program, and that both declined to take her case due to the statute of limitations issue. *Id.* She noted that "[t]he pro se process is daunting, confusing, difficult to navigate, a disincentive." *Id.* at 8.

Finally, Petitioner contended that she is entitled to a "straightforward exception" to the statute of limitations due to the duration and severity of her symptoms. Pet. Aff. at 8. She argued that she is still suffering GBS sequelae after three years and that her condition exacerbated her pre-existing medical issues. *Id.* She stated that she has demonstrated due diligence and good faith throughout the process and that she should not be penalized for not being litigious. *Id.*

### B. Respondent's Memorandum

In his memorandum, Respondent contended that the petition should be dismissed because it was not timely filed. Resp. Memo. at 2. He noted that Petitioner alleges her symptoms began on November 22, 2019, meaning that the petition would have to have been filed by November 22, 2022, in order to comply with the 36-month statute of limitations. *Id.* at 3. Respondent construed Petitioner's affidavit as requesting application of a discovery rule (i.e., that the statute of limitations does not begin to run until a petitioner learns of the existence of the Program) and argued that there is no explicit or implied discovery rule in the Program. *Id.* (citing *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1337 (Fed. Cir. 2011)).

Respondent also challenged Petitioner's contention that her petition should not be dismissed based on "symptom aggravation" because Petitioner misunderstands the cause of action for significant aggravation under the Vaccine Act. Resp. Memo. at 3-4. He emphasized that there is no evidence that Petitioner had GBS prior to receiving the flu vaccine on November 12, 2019, and thus there is no basis for a significant aggravation claim. *Id.*

Respondent further contended that Petitioner has not established a basis for the application of the doctrine of equitable tolling. Resp. Memo. at 4. He noted that none of the factors Petitioner described as having prevented her from filing her petition on time constitute the extraordinary circumstances necessary for equitable tolling to apply. *Id.* at 5. Further, Respondent maintained that Petitioner's failure to file her claim during the two years, ten months, and twenty-seven days between her discharge from the hospital and the expiration of the 36-month period does not constitute the diligent pursuit of her rights. *Id.*

### C. Petitioner's Response

At the status conference on July 24, 2023, Petitioner orally responded to Respondent's Memorandum by stating that she believes she has demonstrated both reasonable diligence and extraordinary circumstances, the requirements for equitable tolling. ECF No. 18 at 1-2. She emphasized her belief that dismissal of her petition would be an injustice and reiterated that she was never informed of the existence of the Vaccine Program by any of her healthcare providers. *Id.* at 2.

In her supplemental written response filed on October 30, 2023, Petitioner argued that her claim should not be dismissed. Pet'r's Response. She contended that the government had an affirmative duty to inform her of the risks of GBS associated with flu vaccination and of the existence of the Vaccine Program. *Id.* at 10, 12. She emphasized the obstacles that she has faced in the process of pursuing her claim as a *pro se* litigant. She alleged that systemic problems within the Program and the medical community resulted in her lack of awareness of the Program's existence, thus entitling her to application of equitable tolling. *Id.* at 16-17.

Petitioner also argued that the statute of limitations period should be calculated counting weekdays only, which would extend it beyond the date on which the petition was filed. Pet'r's Response at 35. Finally, she suggested that she was given insufficient opportunity to present her case in favor of equitable tolling. *Id.* at 12-13.

### IV. Legal Standard

The statute of limitations, or the timeframe within which a person who has sustained a vaccine-related injury must file a claim, is outlined in § 16(a)(2) of the Vaccine Act:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury ***after the expiration of 36 months*** after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

*Id.* § 300aa-16(a)(2) (emphasis added). The statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Hum. Servs.,* 727 F.3d 1365, 1369 (Fed. Cir. 2013).

The Supreme Court has held that the party who seeks equitable tolling, or an extension of a statue of limitations, has the burden of demonstrating "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)). The diligence prong examines factors within the litigant's control and the extraordinary circumstances prong examines factors outside the litigant's control. *Id.* at 257.

In *Cloer,* the Federal Circuit held that equitable tolling is available in Vaccine Program cases. 654 F.3d at 1340. The *Cloer* court also noted that "equitable tolling is to be used 'sparingly' in federal cases," and that it has typically been reserved for circumstances in which fraud or deceit on the part of the opposing party caused the movant to allow the deadline to pass. 654 F.3d at 1344-45 (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

### V. Discussion

There is no dispute that Petitioner filed her petition after the 36-month period had expired. Petitioner developed her first symptoms of GBS on approximately November 22, 2019.[5] Thirty-six months from Petitioner's onset of disease is November 22, 2022. The petition in this case was filed on January 27, 2023, more than two months after the filing deadline. I construe Petitioner's assorted arguments against dismissal as falling into a few general categories. I will examine each in turn.

#### A. Equitable Tolling

The majority of Petitioner's written and oral submissions contend that equitable tolling should apply on various grounds. After a thorough review of the evidence presented and the

---

[5] In fact, this is the *latest* that Petitioner could have developed symptoms of GBS. When she presented to the doctor on November 22, 2019, she reported bilateral leg pain that started in her feet and radiated up her legs which had been "very persistent for the past month." Ex. 2 at 5. This medical record suggests that the onset of Petitioner's GBS was on or about October 22, 2019.

parties' respective arguments, for the reasons articulated below, I find that Petitioner has not established that grounds for equitable tolling exist.

1.  Extraordinary Circumstance: Mental Impairment

Petitioner argues for equitable tolling of the statute of limitations due to her feeling "exhaustion, frightened, confused and stunned by GBS diagnosis and dependency," as well as experiencing "brain fog," all of which I construe as an argument that mental impairment prevented her from filing her petition on time. Pet. Aff. at 6.

The Federal Circuit has held that equitable tolling on the basis of mental impairment is available in Vaccine Program cases. *K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1381 (Fed. Cir. 2020). In *K.G.*, the court adopted the standard previously articulated for equitable tolling on the basis of mental impairment in the context of claims for veterans' benefits:

> To show extraordinary circumstances, as in the veterans' benefits context, a Vaccine Act claimant must show that her failure to file was the direct result of a mental illness or disability that rendered her incapable of rational thought, incapable of deliberate decision making, incapable of handling her own affairs, or unable to function in society. A medical diagnosis alone or vague assertions of mental problems are insufficient.

*Id.* at 1381-82 (citing *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004)). Analyses of similar claims by other special masters illustrate that neurologic symptoms without more do not constitute mental impairment or illness sufficient to meet the "extraordinary circumstances" standard. *E.g., Huntoon v. Sec'y of Health & Hum. Servs.*, 2023 WL 2231842, at *4-5 (Fed. Cl. Spec. Mstr. Feb. 27, 2023) (finding where the petitioner suffered from multiple sclerosis and acute cerebellar ataxia that "[t]he unquestionable impact of her medical suffering has not been shown to rise to the level of the kind of mental capacity observed in other cases as a basis for tolling."). Moreover, evidence that a petitioner is able to make medical decisions or advocate for her interests cuts against an argument that a mental impairment was so severe that it constituted extraordinary circumstances. *E.g., DaSilva v. Sec'y of Health & Hum. Servs.*, No. 18-1282V, 2019 WL 7372729, at * 21 (Fed. Cl. Spec. Mstr. Dec. 10, 2019) (finding that the petitioner was not entitled to equitable tolling on mental impairment grounds where the medical record showed that she had "actively participated in treatment decisions" and pursued a social security disability income claim requiring significant documentation in support).

In cases in which petitioners have successfully argued for equitable tolling on this basis, the degree of mental impairment is unquestionably debilitating. *Gray v. Sec'y of Health & Hum. Servs.*, No. 15-146V, 2016 WL 6818884, at *5 (Fed. Cl. Spec. Mstr. Oct. 17, 2016) (finding that petitioner was mentally incapacitated where her provider's opinion and testimony of her adult children showed that petitioner had been unable to handle her own affairs or make decisions on her own and was "completely reliant on her daughter."); *Hodge v. Sec'y of Health & Hum. Servs.*, No. 09-453V, 2015 WL 9685916, at *24 (Fed. Cl. Spec. Mstr. Dec. 21, 2015) (finding that extraordinary circumstances existed with regard to petitioner's mental illness where the medical record and petitioner's testimony supported an extensive history of severe depression, suicidal ideation, hallucinations, impaired judgment and insight, and psychosis).

Here, Petitioner concedes that she was "not formally or legally 'incompetent,' mentally incapacitated, or 'disoriented.'" Pet. Aff. at 6. The medical records reflect that on the date of vaccination, Petitioner had a history of anxiety and depression that were "[n]ot well controlled" with escitalopram and Xanax. Ex. 2 at 1, 3. On that date, Petitioner reported that she had been experiencing poor sleep and low appetite for a few months. *Id.* At or around the time of her symptom onset on November 22, 2019, Petitioner had normal appearance, affect, and thought content. *Id.* at 6. On December 12, 2019, Petitioner reported to her PCP because she was "scared that [her] symptoms seem[ed] to be progressing" and specifically requested further evaluation by a neurologist. *Id.* at 7. At this appointment, her PCP noted that Petitioner appeared weak and thin on exam, but that her thought content remained normal. *Id.* at 8. The record of her discharge from the hospital on December 20, 2019, makes no mention of psychological or mental health concerns. *Id.* at 10.

At a follow-up appointment on January 3, 2020, Petitioner was noted to be "participating actively in her treatment in order to improve" and was "optimistic about making progress as an outpatient." *Id.* at 13. In the record of this visit are two of Petitioner's responses to the Patient Health Questionnaire-2 ("PHQ-2") and the Patient Health Questionnaire-9 ("PHQ-9").[6] *Id.* at 14. Petitioner responded that she felt "[l]ittle interest or pleasure in doing things" more than half of the days and that she felt "down, depressed, or hopeless" more than half of the days. *Id.* Petitioner declined to answer the remaining questions. *Id.*

Upon consideration of all filed medical records and all of Petitioner's statements made both orally and in writing, I find that Petitioner has not shown that her mental state "rendered her incapable of rational thought, incapable of deliberate decision making, incapable of handling her own affairs, or unable to function in society." *K.G.*, 951 F.3d at 1381. The medical records do not reflect concerns about Petitioner's mental capacity on the part of any provider. Rather, they show that Petitioner participated in her treatment and made conscious decisions to seek specialist care as her symptoms worsened. Petitioner's PHQ-2 and PHQ-9 responses suggest that Petitioner may have been suffering from some symptoms of depression in early January 2020. However, the record indicates that Petitioner's history of depression and anxiety predates her flu vaccination and does not contain any indication that such symptoms prevented Petitioner from thinking rationally, making deliberate decisions, handling her own affairs, or participating in society.

Petitioner's psychological and emotional distress resulting from her illness are understandable, but they do not rise to the level of exceptional circumstances as articulated in *K.G.* Accordingly, Petitioner's claim for equitable tolling on the basis of mental impairment is unavailing.

---

[6] "The PHQ-9 and PHQ-2, components of the longer Patient Health Questionnaire, offer psychologists concise, self-administered tools for assessing depression. They incorporate DSM-IV depression criteria with other leading major depressive symptoms into a [sic] brief self-report instruments that are commonly used for screening and diagnosis, as well as selecting and monitoring treatment." *Patient Health Questionnaire (PHQ-9 & PHQ-2)*, AM. PSYCH. ASS'N., https://www.apa.org/pi/about/publications /caregivers/practice-settings/assessment/tools/patient-health (last visited Nov. 8, 2023).

2.   Extraordinary Circumstance: Physical Impairment

Petitioner also maintains that the statute of limitations should be equitably tolled due to the physical symptoms and limitations she experienced early in her GBS course. Pet. Aff. at 6. In particular, she cites "severe pain and paresthesias, deteriorating neurological and functional status," and her hospitalization and admission to rehab. *Id.* She also states that she was "barely able to manage [her] light self-cares" and was "unable to handle [her] other affairs/roles/responsibilities, function in the outside world, or even really assist [her] husband in assuming his new tasks at home." *Id.*[7]

In *Arbas v. Nicholson*, the Federal Circuit held that physical impairment can constitute extraordinary circumstances for purposes of equitable tolling in the context of claims for veterans' benefits. 403 F.3d 1379, 1381-82 (Fed. Cir. 2005). In *Arbas*, the court noted that "if mental illness can justify tolling, we see no reason why a physical illness may not as well. There are a myriad of physical illnesses or conditions that impair cognitive function or the ability to communicate." *Id.* at 1381. The *Arbas* court adopted the *Barrett* standard, holding that "the Veterans Court must focus on whether the particular infirmity of the veteran prevented him from engaging in 'rational thought or deliberate decision making' or rendered him 'incapable of handling [his] own affairs or unable to function [in] society.' The source of such an infirmity is irrelevant." *Id.* (citing *Barrett*, 363 F.3d at 1321).

Accordingly, the appropriate inquiry is whether Petitioner's physical limitations "rendered her incapable of rational thought, incapable of deliberate decision making, incapable of handling her own affairs, or unable to function in society." *K.G.*, 951 F.3d at 1381 (citing *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004)).

The medical records reflect that Petitioner's disease course was difficult. At the time of her symptom onset, Petitioner was experiencing "sharp, shooting pain in her hands, feet, and legs," as well as weakness and loss of sensation in her feet, which resulted in several falls. Ex. 2 at 7. Petitioner was hospitalized for seven days during which she "underwent extensive evaluation and workup" and received IVIG treatment for her GBS. *Id.* at 10, 13. Petitioner underwent several weeks of inpatient rehab and PT to deal with her ongoing weakness, gait instability, and pain. *Id.*

Despite the physical difficulties documented in the medical records and in Petitioner's statements, her experience does not amount to extraordinary circumstances for purposes of applying equitable tolling. In *Clubb v. Secretary of Health & Human Services*, the Court of Federal Claims affirmed the special master's holding that equitable tolling did not apply where the petitioner had been hospitalized, during which time he "was non-ambulatory and bed-bound due to paralysis" and "suffered from facial paralysis and difficulty eating and swallowing." 136 Fed. Cl. 255, 264-65 (2018). The Court held that the special master had reasonably concluded that petitioner's physical impairments "impacted his ability to independently perform certain

---

[7] Petitioner refers to this section of her Affidavit as "Symptom Aggravation." Pet. Aff. at 4-5. Respondent contends, and I agree, that Petitioner has misapprehended the Vaccine Program provisions pertaining to significant aggravation of a preexisting medical condition by a vaccine. Resp. Memo. at 3-4. Because Petitioner has not contended that the flu vaccine caused her pre-existing GBS to worsen, I have not discussed significant aggravation further.

activities" but "did not rise to a level of severity to warrant equitable tolling." *Id.* at 265. The special master in *DaSilva v. Secretary of Health and Human Services* likewise found that the petitioner's physical impairments during her hospitalization were not sufficient to warrant equitable tolling despite her "extensive physical, occupational, and speech therapy," as well as the placement of a feeding tube due to difficulty swallowing. 2019 WL 7372729, at *20.

Having considered all of the medical evidence Petitioner provided, as well as her spoken and written submissions, I conclude that the physical difficulties she suffered, while significant, do not rise to the level of extraordinary circumstances as articulated in *Barrett*. Petitioner has not presented evidence that her physical ailments prevented her from thinking logically or from managing her own affairs. As detailed above, caselaw in the Program is clear that muscle weakness necessitating rehabilitative therapy, reduced or absent ability to ambulate unassisted, and lengthy hospitalization do not constitute extraordinary circumstances. Accordingly, Petitioner cannot prevail on her claim for equitable tolling on the basis of physical impairment.

### 3.   Extraordinary Circumstance: Entitlement to Notice

Petitioner contends that she is entitled to equitable tolling because she was unaware of the Vaccine Program until after the statute of limitations had expired due to "the government['s]" failure to inform her of its existence. Petitioner contends that "[t]he government took voluntary prospective responsibility for me during 1986-88 with the enactment of the Vaccine Act/VICP." Pet'r's Response at 7; *see also, id.* at 20, 36, 41. Petitioner asserts that an unspecified government entity had an affirmative duty to protect her and warn her of the risks associated with vaccines. *Id.* at 17. She argues that the Vaccine Program is not well-publicized. *Id.* at 18, 38.

In general, equitable tolling is available in situations in which the non-moving party's fraud or deceit induced the complainant to allow the filing deadline to pass. *Irwin*, 498 U.S. at 96; *see Cloer*, 654 F.3d at 1344. However, Petitioner states explicitly that she does not allege deliberate fraud. Pet'r's Response at 20 ("No malice is implied, simply omissions, misinformation, inactions, flaws, etc., the confluence of which resulted in my predicament."). I thus construe Petitioner's statements as arguing that some entity within the government had a duty to inform her of the existence of the Vaccine Program, and that its non-fraudulent failure to do so constituted extraordinary circumstances for purposes of equitable tolling.

In *Collier v. Secretary of Health and Human Services*, the petitioner failed to dismiss her state court action based on her alleged vaccine injury in time to file a petition in the Vaccine Program shortly after its enactment. 37 Fed. Cl. 227, 228 (1997), *aff'd sub nom. Bouley v. Sec'y of Health & Hum. Servs.*, 152 F.3d 940 (Fed. Cir. 1998). She alleged "that she was not aware of the Vaccine Act until shortly before the deadline for filing a petition thereunder because the Secretary of the Department of Health and Human Services (HHS) had failed adequately to inform the public of the existence of the Vaccine Program." *Id.* at 230-31. The court upheld the special master's rejection of this argument because "[t]he essence of petitioner's argument [was] that she was not aware of the underlying law that gave rise to her cause of action. Ignorance of the law is not a ground for tolling a statute of limitations." *Id.* at 231 (citing *New York and Cuba Mail S.S. Co. v. United States,* 145 Ct. Cl. 652, 658 (1959).

11

As in *Collier*, Petitioner here "has not pointed to any actions or inactions by respondent that can be characterized as misconduct by the government." *Id.* Moreover, she does not provide support for her conclusory assertions that the government had an affirmative duty to protect her in some way. Her argument for equitable tolling on this basis cannot succeed.

4. Extraordinary Circumstance: Pro Se Status

I construe Petitioner's final point pertaining to extraordinary circumstances as arguing that her pro se status is an extraordinary circumstance for purposes of equitable tolling. Pet'r's Response at 40 ("The man who represents himself in court has a fool for a client and an incompetent attorney – well, here I am, with incompetent self-representation due to system failure (i.e. vaccine attorney perceptions of courts/SOL))." Pet'r's Response at 40.

This argument amounts to the claim that ignorance of the law constitutes extraordinary circumstances, and it has been soundly rejected by several courts. *E.g., Clubb*, 136 Fed. Cl. at 266 (upholding the special master's rejection of pro se status as a "disadvantage" sufficient to toll the statute of limitations); *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 464 (6th Cir. 2012) (Federal *habeas* petitioner's "*pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing.") (citations omitted); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.") (citations omitted).

Accordingly, Petitioner's claim for equitable tolling on this basis also fails.

5. Due Diligence

Petitioner argues that her conduct prior to and after her discovery of the existence of the Vaccine Program on December 16, 2022, constitutes due diligence. Pet. Aff. at 2-3; Pet'r's Response at 22-26. She avers that this due diligence did not yield information that could have led her to think that she might have a claim for compensation or even that the Vaccine Program existed. *Id.* She does not indicate which sources she consulted.

The Federal Circuit has adopted the "stop-clock" approach to determine whether equitable tolling, when it applies, can excuse a late filing. *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014). In *Checo*, the court held that a petitioner "must only demonstrate due diligence during the extraordinary circumstance period," and not during the entirety of the statutory period. *Id.*; *see also, K.G.,* 951 F.3d at 1379 (applying the stop-clock approach to a Vaccine Program case).

Caselaw in the Vaccine Program and elsewhere clearly establishes that, where a litigant would have discovered some piece of information through reasonably diligent attempts to find it, the litigant cannot rely upon the lack of such information to excuse untimely filing of her petition. *K.G.*, 951 F.3d at 1380 ("Lack of knowledge of an actionable claim is not, however, a basis for equitable tolling.") (citing *Cloer*, 654 F.3d at 1344-45). Petitioner avers that she conducted considerable research on GBS beginning on December 26, 2019, and did not "stumble[] upon" the Vaccine Program until December 16, 2022. Pet'r's Response at 43. She claims that "consistent, outdated, incomplete, and inaccurate information understandably misled me to the conclusion that

GBS occurrence post-vaccine is quite rare. This inaccurate information thwarted my due diligence at that time." *Id.*

The fact that Petitioner eventually found information about the Vaccine Program in December 2022 suggests that it was available for her to find all along. Petitioner does not state that she learned the Vaccine Program information from a source that either did not exist or did not contain the relevant information prior to December 2022.

I also note that throughout her filings, Petitioner emphasizes that she is not a litigious person. Pet. Aff. at 8 ("I doubt that Congress or the Courts intended to penalize people for the 'sin' of being non-litigious."); *Id.* at 6 ("[A]s a LIFELONG non-litigious person, finding compensation or suing someone was the last thing on my mind, during both acute and chronic phases of GBS."); Pet'r's Response at 16 ("I did not and could not recognize the legal harm until 12/16/22 (accidental VICP find) because of the inherent barriers and strictures as described herein, unless I had been litigious and engaged an attorney earlier."); *Id.* at 34 ("My predicament was almost foredoomed, given my anti-litigation stance…The only thing that would have spared this entire episode would have been to engage an attorney earlier.").

Petitioner rightly points out that she could have met her filing deadline had she engaged an attorney earlier or been more attentive to the possibility that she might have a legal claim related to her GBS. Diligence in this context means diligence in defending one's rights. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.") (citation omitted); *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights.") (internal quotation marks and citation omitted). Petitioner's statements cut strongly against her argument that she was diligent in the pursuit of her rights for purposes of equitable tolling. Accordingly, I find that Petitioner has not made the requisite showing of due diligence.

## B. Miscellaneous Arguments

In addition to her claims for equitable tolling, Petitioner makes reference to additional arguments. None are availing, but I will briefly address each in turn.

### 1. Discovery Rule

As discussed above, Petitioner makes multiple arguments pertaining to her unawareness of the existence of the Vaccine Program. In addition to the theory of equitable tolling which she invokes by name, Respondent correctly points out that these statements can also be construed as arguing for a discovery rule. Resp. Memo. at 3.

This iteration of Petitioner's argument, too, is unsuccessful. In *Cloer*, the Federal Circuit held that the Vaccine Act does not contain an explicit or implicit discovery rule. 654 F.3d at 1337. The court pointed out that Congress fashioned the statute of limitations in the Vaccine Program to begin on the date of the first symptom or manifestation of the alleged vaccine injury. *Id.* at 1338. The statute of limitations on Petitioner's claim began to run on the date of her first symptom of GBS and not when she learned that the Vaccine Program existed.

      2.   Calculating the 36-Month Period

Petitioner also asserts that the statute of limitations period of 36 months should be calculated counting only weekdays. Pet'r's Response at 35. However, the Rules of the Court of Federal Claims and the Vaccine Rules clearly dictate otherwise. RCFC 6(a)(1), Vaccine Rule 19(a)(1)(B) ("When the period is stated in days or a longer unit of time…count every day, including intermediate Saturdays, Sundays, and legal holidays.").

      3.   Opportunity to be Heard

Finally, I address Petitioner's suggestion that she was not given sufficient opportunity to present her case. In her response to the motion to dismiss, Petitioner asserts that

> We are here today in particular following our 7/24 Oral discussion for two reasons…that discussion was unexpectedly ended, with no apparent opportunity for my further input, due to the Court's schedule. This was despite [a] minimum of two assurances by two Court parties here, in writing and verbally, that I would have all the time I needed for my presentation; and that…completely ignorant regarding processes, I became concerned that I had not explained this claim thoroughly enough, based on [the] Special Master's brief summary of my position, i.e., akin to "nobody told her."

Pet'r's Response at 13.

The Vaccine Rules provide that the special master is responsible for "affording each party a full and fair opportunity to present its case ..." Vaccine Rule 3(b)(2).

I find that Petitioner has been afforded a full and fair opportunity to be heard. My initial order instructed her to file "all documentation relevant to address the statute of limitations issue." ECF No. 11 at 2. After Respondent filed his motion to dismiss, I gave Petitioner the opportunity to file her response. ECF No. 15. When Petitioner indicated that she would prefer to deliver her response orally, I held a status conference on July 24, 2023, allowing her to do so. At the status conference, Petitioner spoke for approximately 45 minutes. I informed her that I would have to end the conference at the top of the hour due to another appointment. Petitioner concluded by saying that she had nothing further to add. Later, at Petitioner's request, I permitted her to file additional written material to supplement her oral presentation. ECF No. 19. Petitioner filed a 50-page document. *Id.*

Petitioner does not state what evidence or information she wished to, but did not present for my consideration. Indeed, based on my experience, her two submissions, which include 45 minutes of oral presentation and a 50-page supplemental document, exceed what is generally submitted in comparable matters. Based on the above, I find that Petitioner had a full and fair opportunity to be heard on the issue of whether her claim is time barred.

### VI.  Conclusion

Petitioner has undoubtedly suffered a great deal as a result of her condition. However, the petition in this case was filed more than 36 months after the onset of her symptoms, and further Ms. Simmons has not justified the tolling of the statute of limitations. Accordingly, the law requires that I dismiss her petition.

The case is hereby **DISMISSED** because it is barred by the statute of limitations. **The Clerk shall enter judgment accordingly.**

A copy of this decision shall be sent to Petitioner via email to everonward11@comcast.net.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master